**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

| | | |
|---|---|---|
| DAVID ALLEN HANCOCK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2:17-cv-00313-TLS-JEM |
| v. | ) | |
| | ) | |
| NAVIENT SOLUTIONS, LLC, | ) | |
| | ) | |
| Defendant | ) | |

<u>**MEMORANDUM IN SUPPORT OF DEFENDANT NAVIENT
SOLUTIONS, LLC'S MOTION FOR SUMMARY JUDGMENT**</u>

By: */s/ Aliza Malouf*
Aliza Malouf
Indiana Bar No. 31063-49
**HUNTON ANDREWS KURTH LLP**
1445 Ross Ave., Suite 3700
Dallas, Texas 75202
214-979-8229
(214) 740-7157 (fax)
amalouf@huntonAK.com

**COUNSEL FOR DEFENDANT
NAVIENT SOLUTIONS, LLC**

# TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................................1

II.   BACKGROUND ..................................................................................................1

    A.    Hancock's Student Loans. ..........................................................................1

    B.    The Federal Family Education Loan Program. ...........................................2

    C.    The Budget Act. ........................................................................................3

    D.    The Budget Act as a Bar to TCPA Claims on FFELP Loans. .................4

    E.    Hancock's Complaint.................................................................................5

III.  STATEMENT OF MATERIAL FACTS..........................................................5

IV.   ISSUE STATEMENT.........................................................................................8

V.    SUMMARY JUDGMENT STANDARD...........................................................8

VI.   SUMMARY OF THE ARGUMENT .................................................................9

VII.  ARGUMENT & AUTHORITIES .....................................................................9

    A.    NSL had prior express consent to call Hancock's alleged cellular telephone number using an ATDS and artificial voices or prerecorded messages. .................9

    B.    The Budget Act bars Hancock's TCPA claims as a matter of law. .......................10

        1.    The FCC's stop-calling rules did not take effect. ......................................10

        2.    The plain text of the TCPA, as amended, governs Hancock's claims.......10

            a.    NSL's calls were made solely to collect on the FFELP Loans......12

            b.    The FFELP Loans are guaranteed by the United States. ...............12

        3.    Applying the plain text of the Budget Act is consistent with Congress's intent. .................................................................................................14

    C.    The HEA, its regulations, and related contracts pervasively regulate the collection of federal student loans and, therefore, preempt Hancock's IDCSA claims. ........15

        1.    The HEA, its regulations, and related guidance pervasively regulate the collection of the FFELP Loans and, therefore, preempt Hancock's IDCSA claims. .................................................................................................16

2.    Hancock's I.C. 24-5-0.5-3(a) claim based on the number and frequency of calls made by NSL is preempted because it poses an obstacle to NSL's exercise of mandatory due diligence when collecting on the FFELP Loans.19

3.    Hancock's I.C. 24-5-0.5-3(a) claim based on calls made after a stop request also is preempted because the HEA imposes a duty to call to collect on the FFELP Loans.....................................................................21

4.    NSL's conduct was not unfair, abusive, or harassing as a matter of law. .22

VIII.    CONCLUSION....................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abrams v. MiraMed Revenue Group, LLC*
   No. 1:11-CV-652-DKL-WTL, 2013 WL 1319385 (S.D. Ind. Mar. 29, 2013)......................21

*Adams v. Pennsylvania Higher Eduation. Assistance Agency*
   787 S.E.2d 583 (W. Va. 2016)............................................................................20

*Altria Group, Inc. v. Good*
   555 U.S. 70 (2008)............................................................................................14

*Anderson v. Liberty Lobby, Inc.*
   477 U.S. 242 (1986)............................................................................................7

*Aux Sable Liquid Products v. Murphy*
   526 F.3d 1028 (7th Cir. 2008) ........................................................................14

*Beeders v. Gulf Coast Collection Bureau*
   796 F. Supp. 2d 1335 (M.D. Fla. 2011)...........................................................22

*Bible v. United Student Aid Funds, Inc.*
   799 F.3d 633 (7th Cir. 2015) ...........................................................1, 11, 14, 17

*Brannan v. United Student Aid Funds, Inc.*
   94 F.3d 1260 (9th Cir. 1996) ...........................................................2, 14, 16, 17

*Carman v. CBE Group, Inc.*
   782 F. Supp. 2d 1223 (D. Kan. 2011).............................................................22

*Clingaman v. Certegy Payment Recovery Svcs.*
   No. 10–2483, 2011 WL 2078629 (S.D. Tex. May 26, 2011)................................22

*Coll. Loan Corp. v. SLM Corp.*
   396 F.3d 588 (4th Cir. 2005) ..........................................................................18

*Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*
   458 U.S. 151 (1982)..........................................................................................14

*Gaza v. Navient Solutions, LLC*
   No. 8:18-cv-1049-MSS-SPF, 2019 WL 645390 (M.D. Fla. Jan. 23, 2019)..........................12

*Green v. Navient Sols., LLC*
   No. 1:17-CV-1453-VEH, 2018 WL 6303775 (N.D. Ala. Nov. 29, 2018) .........................4, 12

*Harrington v. RoundPoint Mortg. Servicing Corp.*
  290 F. Supp. 3d 1306 (M.D. Fla. Nov. 30, 2017) ................................................... 22

*Hassert v. Navient Sols., Inc.*
  232 F. Supp. 3d 1049 (W.D. Wis. 2017) ......................................................... 1, 11

*Hunt v. Sallie Mae, Inc.*
  No. 11-11324, 2011 WL 2847428 (E.D. Mich. July 19, 2011) ........................ 20, 21

*In re Rules & Regulations Implementing Telephone Consumer Protection Act of
  1991* CG Docket No. 02-278, 2016 Report and Order, FCC 16-99, at 24-25,
  ¶¶ 59-60 (August 11, 2016) ..................................................................... 3, 10

*Johnson v. Sallie Mae Servicing Corp.*
  102 Fed. Appx. 484 (7th Cir. 2004) ................................................................... 17

*Jones v. Rash Curtis & Assocs.*
  No. 10–CV–0225, 2011 WL 2050195 (N.D. Cal. Jan. 3, 2011) ............................ 22

*Lardner v. Diversified Consultants Inc.*
  17 F. Supp. 3d 1215 (S.D. Fla. 2014) ................................................................ 22

*Medtronic, Inc. v. Lora Lohr*
  518 U.S. 470 (1996) ........................................................................................ 15

*Morgan v. Markerdowne Corp.*
  976 F. Supp. 301 (D.N.J. 1997) ....................................................................... 11

*Pirouzian v. SLM Corp.*
  396 F. Supp. 2d 1124 (S.D. Cal. 2005) ............................................................. 16

*Pugliese v. Prof'l Recovery Serv., Inc.*
  No. 09–12262, 2010 WL 2632562 (E.D. Mich. June 29, 2010) ............................ 22

*Riel v. Navient Sols. Inc.*
  No. 16-CV-1191-JPS, 2017 WL 168900 (E.D. Wis. Jan. 17, 2017) ...................... 17

*Sanford v. Navient Sols., LLC*
  No. 1:17-cv-4356, 2018 WL 4699890 (S.D. Ind. Oct. 1, 2018) ......................... 4, 12

*Schneider v. Navient Solutions, LLC*
  No. 16-CV-6760 CJS, 2018 WL 2739437 (W.D.N.Y. June 7, 2018) ............... passim

*Tucker v. CBE Grp., Inc.*
  710 F. Supp. 2d 1301 (M.D. Fla. 2010) ............................................................. 22

*Weaver v. Navient Sols., Inc*
  No. 5:16-cv1304, 2017 WL 3456325 (N.D. Ohio Aug. 11, 2017) ...................... 4, 11

*Whalen v. Navient Sols., LLC*
No. 4:17-cv-00056-TWP-DML, 2018 WL 1242020 (S.D. Ind. Mar. 9, 2018) ..............4, 9, 11

*Williams v. Educ. Credit Mgmt. Corp.*
88 F. Supp. 3d 1338 (M.D. Fla. 2015) ...................................................................17, 18, 19, 20

*Workman v. Navient Solutions, Inc.*
No. 1:16-cv-00457-JMS-DKL, 2016 WL 4088716 (S.D. Ind. July 27, 2016)........................10

OTHER STATUTES

I.C. 24-5-0.5-2(a)(1)(C) .............................................................................................................11

I.C. 24-5-0.5-3(a) ..................................................................................................18, 20, 21, 23

I.C. 24-5-0.5-3(a) and (b)(19) .....................................................................................................11

I.C. 24-5-05-3(a) ...................................................................................................................20, 21

I.C. § 24-5-0.5-3(a) ..........................................................................................................18, 19, 20

Fla. Stat. § 559.72(7)........................................................................................................18, 19

Michigan Collection Practices Act, M.C.L. § 445.251 et seq. ..................................................20

OTHER AUTHORITIES

34 C.F.R. § 682.410 ..................................................................................................................19

34 C.F.R. § 682.411 ............................................................................................................19, 20

34 C.F.R § 682.411(a).............................................................................................................1, 19

34 C.F.R § 682.411(d) ...............................................................................................................19

34 C.F.R § 682.411(o) .........................................................................................................15, 20

34 C.F.R. § 682.411(o)(1)............................................................................................................2

47 C.F.R. § 64.1200 ....................................................................................................................9

55 Fed. Reg. at 40120-21 ............................................................................................................2

55 Fed. Reg. at 40121 ................................................................................................................15

55 Fed. Reg. at 40121, ¶ 1 .........................................................................................................15

2016 FCC Order..........................................................................................................................12

Fed. R. Civ. P. 56(a) ...........................................................................................7

*Federal Preemption and State Regulation of the Department of Education's Federal Student Loan Programs and Federal Student Loan Servicers*, 83 Fed. Reg. 10619, 10622 (Mar. 12, 2018)...........................................................2

*Stafford Loan, Supplemental Loans for Students, PLUS, and Consolidation Loan Programs*, Notice of Interpretation, 55 Fed. Reg. 40120, 40120 (Oct. 1, 1990).......................1

U.S. Const. Article VI, cl. 2 ...........................................................................14

# I.    INTRODUCTION

Plaintiff David Allen Hancock ("Hancock") complains that Defendant Navient Solutions, LLC ("NSL") violated the Telephone Consumer Protection Act ("TCPA") and Indiana Deceptive Consumer Sales Act ("IDCSA") when it allegedly called his cellular telephone 17 times using an automatic telephone dialing system ("ATDS") without his consent. However, it is undisputed that NSL placed each of these calls in an attempt to collect on Hancock's delinquent federal student loan debt. This Court therefore should grant summary judgment to NSL because (a) Congress exempted calls made to collect on federal student loans from TCPA liability as part of the Bipartisan Budget Act of 2015 (the "Budget Act"), and (b) the Higher Education Act of 1965 ("HEA") and its implementing regulations preempt state statutes like the IDCSA when they interfere with federal student loan collection efforts. Moreover, Hancock consented to receive the 11 calls that NSL actually placed to his telephone number ending "8195." Without a stop-calling request, this conduct was not "unfair, abusive, or deceptive" and did not violate the TCPA.[1]

# II.    BACKGROUND

## A.    Hancock's Student Loans.

On or about November 11, 2009, Plaintiff David Hancock ("Hancock") executed a Federal Stafford Loan Master Promissory Note ("MPN") made pursuant to the Federal Family Education Loan Program ("FFELP"). **Exh. A** at 2, ¶ 5; **Exh. A-1**, MPN. On or about December 18, 2009, one subsidized and one unsubsidized Stafford Loan were disbursed under

---

[1] As argued in NSL's pending motion to dismiss and supporting memorandum [ECF Nos. 10 & 11], Hancock's IDCSA claim fails as a matter of settled law because (a) an alleged violation of the TCPA, without more, is insufficient to maintain a claim under the IDCSA, and (b) Hancock failed to allege sufficient facts to show that NSL acted with intent to mislead or defraud him, or that Hancock was misled or defrauded. To the extent necessary NSL renews and incorporates the arguments of its dismissal motion and reply [ECF No. 14] by reference.

the terms of the MPN in the original principal amounts of $1,750 and $3,000, respectively ("FFELP Loans"). **Exh. A** at 2, ¶ 7. NSL is the servicer of Hancock's FFELP Loans. *Id.* at 2, ¶ 9.

## B. The Federal Family Education Loan Program.

FFELP loans are authorized under Title IV, Part B, of the HEA, as amended, 20 U.S.C. §§ 1071–1087. FFELP loans were made by private lenders, are guaranteed by guaranty agencies, and are reinsured under guaranty agreements with ED. *Hassert v. Navient Sols., Inc.*, 232 F. Supp. 3d 1049, 1050 (W.D. Wis. 2017). If a borrower defaults, the lender must exercise due diligence in an effort to collect the debt. *Id.* If unsuccessful, the guaranty agency must buy the loan, attempt to collect, and recoup its losses under a guaranty agreement with ED. *Id.* "Because of the reinsurance commitment, the federal government serves as the ultimate guarantor on each loan." *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 640 (7th Cir. 2015).

The Secretary of ED adopted regulations in November 1986, to cover lenders' and guaranty agencies' collection efforts on FFELP loans that were reinsured and subsidized by ED. *See* **Exh. C**, *Stafford Loan, Supplemental Loans for Students, PLUS, and Consolidation Loan Programs*, Notice of Interpretation, 55 Fed. Reg. 40120, 40120 (Oct. 1, 1990) (citations omitted). Among other things, the HEA regulations imposed "due diligence" requirements on lenders, guaranty agencies, and third-party servicers relating to the collection of FFELP loans and required guaranty agencies to charge their collection costs to borrowers "to prevent these costs from being passed on to federal taxpayers." *Bible*, 799 F.3d at 641 (citation omitted).

For loan servicers like NSL, ED's regulations dictate how it must act to resolve student loan delinquencies under FFELP, including the remittance of letters and telephone calls to delinquent borrowers, the use of skip tracing, and the escalation of collection efforts as the delinquency of a loan extends from 1 day to up to 330 days past due. *See* 34 C.F.R § 682.411(a)

("In the event of delinquency on an FFEL program loan, the lender must engage in at least the collection efforts described in paragraphs (c) through (n) of this section . . . .").

In 1990, ED issued a formal Notice of Interpretation to clarify and affirm that these regulations preempt <u>any</u> state law that prohibits, restricts, or imposes burdens on the ability of lenders, guaranty agencies, or third parties (including loan servicers and debt collectors) to meet the HEA's due diligence requirements. **Exh. C**, 55 Fed. Reg. at 40120-21. It was ED's intent, among other things, to "establish a uniform national minimum level of collection activity" and to set the "'minimal level of effort necessary to protect the Federal fiscal interest in diligent loan collection' by both guarantee agencies and by lenders.'" *Id.*

ED later incorporated the conclusion of its 1990 Notice of Interpretation into the HEA's regulations, "[p]reempt[ing] any State law, including State statutes, regulations, or rules, that would conflict with or hinder satisfaction of the requirement or frustrate the purposes of [the HEA's due diligence regulations]." 34 C.F.R. § 682.411(o)(1); *accord Brannan v. United Student Aid Funds, Inc.*, 94 F.3d 1260, 1264 (9th Cir. 1996). Interpreting these same due diligence regulations in March 2018, ED affirmed that state laws are preempted if they "conflict with or hinder the efforts of lenders or their servicers to satisfy and comply with the due diligence steps for loan collection . . . ." **Exh. D**, *Federal Preemption and State Regulation of the Department of Education's Federal Student Loan Programs and Federal Student Loan Servicers*, 83 Fed. Reg. 10619, 10622 (Mar. 12, 2018) (citing 34 CFR 682.411(o)(1)).

### C. The Budget Act.

The Budget Act amended the TCPA, effective November 2, 2015, to remove calls made using an automatic telephone dialing system ("ATDS") from the TCPA's reach when they are "made solely to collect a debt owed to or guaranteed by the United States." Bipartisan Budget Act of 2015, Pub. L. No. 114-74, § 301(a)(1), 129 Stat. 588 (2015) (codified as amended at 47

U.S.C. § 227(b)(l)(A)(iii)). Congress granted the Federal Communications Commission ("FCC") authority under the Budget Act to "restrict or limit the number and duration" of the newly exempted calls, and it directed the FCC to prescribe regulations to implement the Budget Act's amendments. *Id.* at § 301(a)(2), (b). The FCC issued a Report and Order containing "stop-calling" rules in August 2016. *See* **Exh. E**, *In re Rules & Regulations Implementing Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, 2016 Report and Order, FCC 16-99, at 24-25, ¶¶ 59-60 (August 11, 2016). However, the FCC provided in the 2016 Report and Order that its stop-calling rules only were to become effective 60 days after it published notice in the Federal Register that the Office of Management and Budget ("OMB") had approved the rules. 2016 Report and Order, at 24-25, 28, ¶¶ 59-60, 72; *Schneider v. Navient Solutions, LLC*, No. 16-CV-6760 CJS, 2018 WL 2739437, at *3 (W.D.N.Y. June 7, 2018) (citations omitted).

The FCC later withdrew its stop-calling rules <u>before</u> obtaining OMB approval.



Office of Mgmt. & Budget, *Information Collection Review*, *https://reginfo.gov/public/do/ PRAViewICR?ref_nbr=201701-3060-011* (last visited March 21, 2019). As a result, no notice was published in the Federal Register and the FCC's rules never took effect. *See id.*

**D.      The Budget Act as a Bar to TCPA Claims on FFELP Loans.**

Because the FCC's stop-calling rules never took effect, courts around the country have held that the plain language of the TCPA bars such claims relating to FFELP loans. *E.g.*, *Green v. Navient Sols., LLC*, No. 1:17-CV-1453-VEH, 2018 WL 6303775, at *5-7 (N.D. Ala. Nov. 29, 2018); *Schneider*, 2018 WL 2739437, at *7; *Whalen v. Navient Sols., LLC*, 4:17-cv-00056-TWP-DML, 2018 WL 1242020, at *5 (S.D. Ind. Mar. 9, 2018); *Weaver v. Navient Sols., Inc*, No. 5:16-cv1304, 2017 WL 3456325, at *3 (N.D. Ohio Aug. 11, 2017); *see also Sanford v. Navient Sols., LLC*, No. 1:17-cv-4356, 2018 WL 4699890, at *2 (S.D. Ind. Oct. 1, 2018) (granting judgment on the pleadings to NSL because the Budget Act was a "complete defense" to TCPA claims).

### E. Hancock's Complaint.

Hancock filed suit against NSL on July 24, 2017, alleging claims under the TCPA and IDCSA. Hancock admitted that he failed to pay his FFELP Loans as agreed, Compl. at 2, ¶ 10; but complained about the calls he allegedly received from NSL as a result, *id.* at 2, ¶ 11. Specifically, Hancock alleged that NSL began calling his cellular telephone number ending "8195" (the "8195 number") to collect on his defaulted FFELP Loans. *Id.* at 3, ¶ 16 ("Plaintiff was informed by one of Defendant's representatives that it was seeking to collect upon a defaulted student loan."). According to Hancock, he asked NSL to stop calling the 8195 number, but he received at least 17 more calls before filing suit. *Id.* at 3, ¶¶ 18, 20.

Citing NSL's collection efforts in connection with the FFELP Loans, Hancock alleged that (1) NSL called the 8195 number using an ATDS without his consent in violation of the TCPA, (2) NSL's "systematic and frequent collection attempts" after his alleged stop-calling request were "unfair, abusive, or deceptive" in violation of the IDCSA.

This Court should grant summary judgment to NSL on Hancock's claims.

### III. STATEMENT OF MATERIAL FACTS

1.     NSL is a student loan servicer. **Exh. A** at 2, ¶ 4; Compl. at 2, ¶ 6.

2.    On September 21, 2015, NSL repurchased the FFELP Loans from the FFELP loan guarantor, Educational Credit Management Corporation ("ECMC"). **Exh. A** at 2, ¶ 8.

3.    NSL is the current servicer of Hancock's FFELP Loans. **Exh. A** at 2, ¶ 9. Other than the FFELP Loans it currently services, NSL does not service any of Hancock's other student loans, including any private loans he may have. *Id.*

4.    Hancock agreed as follows in the MPN for the FFELP Loans:

> "I authorize the school, the lender, the guarantor, the Department, and their respective agents and contractors to contact me regarding my loan request(s) on my loan(s), including repaying of my loan(s), at the current or any future number that I provide for my cellular telephone or other wireless device using automated telephone dialing equipment or artificial or prerecorded voice of text messages."

**Exh. A-1**, MPN at 1, § F, ¶ 14.

5.    On December 30, 2015, Hancock signed and submitted an Unemployment Deferment Request to NSL in which he provided the 8195 number and agreed as follows:

> "I authorize the entity to which I submit this request (i.e. the school, the lender, the guaranty agency, the U.S. Department of Education, and their respective agents and contractors) to contact me regarding my request or my loan(s), including repayment of my loan(s), at the number that I provide on this form or any future number that I provide for my cellular telephone or other wireless device using automated telephone dialing equipment or artificial or prerecorded voice or text messages."

**Exh. A** at 3, ¶ 10; **Exh. A-2**, Deferment Req. at 1, § 3.

6.    On November 12, 2016, Hancock submitted an unsigned Unemployment Deferment Request to NSL in which he provided the "8195" number to NSL. **Exh. A-3**.

7.    Hancock failed to pay the FFELP Loans as agreed. Compl. at 2, ¶ 10; **Exh. A** at 3, ¶ 12; **Exh. A-4**. As relevant here, Hancock did not make any payments to NSL on the FFELP Loans after September 21, 2015. **Exh. A** at 3, ¶ 12; **Exh. A-4**.

8.    After Hancock failed to pay his FFELP Loans as agreed, NSL began calling his telephone number ending "8195." Compl. at 2, ¶¶ 11, 16; **Exh. A-5**, Call Logs; **Exh. A-6**.

9. More specifically, NSL's first call to the 8195 number after it repurchased the FFELP Loans was made on March 29, 2017. **Exh. A** at 3, ¶ 14; **Exh. A-6**.

10. Including the initial call identified above, NSL called Hancock at the 8195 number a total of 8 times from its ININ dialing technology ("ININ") between March 29, 2017 and July 24, 2017—with the last call being made on July 12, 2017. **Exh. A** at 4, ¶ 15; **Exh. A-6**.

11. NSL also called Hancock at the 8195 number a total of 3 times using the LiveVox Human Call Initiator ("HCI") dialing technology between May 12, 2017 and July 24, 2017— with the last call being made on July 11, 2017. **Exh. A** at 4, ¶ 16; **Exh. A-6**.

12. All calls placed using the ININ were dialed in either "Preview" or "Dial Now" Modes and required human intervention to dial each call. **Exh. B** at 2, ¶ 3; **Exh. B** at 7, ¶¶ 27-28.

13. Only one call to the 8195 number was answered. On May 29, 2017, an unidentified person said that Hancock "was not here right now." **Exh. A** at 4, ¶ 17; **Exh. I.**

14. Each of the remaining outbound calls that NSL made to the 8195 number after NSL repurchased the FFELP Loans went unanswered. **Exh. A** at 4, ¶ 18; **Exh. A-6**.

15. Hancock did not request that NSL stop calling him at the 8195 number after he granted written consent to receive calls to that number on December 30, 2015. **Exh. A** at 4, ¶ 19.

16. On July 24, 2017, Hancock filed the above-styled and numbered lawsuit. *Id.* at 4, ¶ 20; *see also* Compl. [ECF No. 1].

17. As a result of this lawsuit, NSL updated Hancock's TCPA consent for the FFELP Loan account as "N" on July 25, 2017. **Exh. A** at 4, ¶ 21.

18. NSL did not call the 8195 number after July 12, 2017. *Id.* at 4, ¶ 22; **Exh. A-6**.

19. NSL made no calls to the 8195 number using a prerecorded message or artificial voice after September 21, 2015. **Exh. A** at 4, ¶ 23; **Exh. B** at 7, ¶ 29.

20.     No prerecorded message or artificial voice is used when NSL places calls with the ININ in "Preview" or "Dial Now" Modes or the HCI. **Exh. B** at 6, ¶ 24.

21.     All of the calls made by NSL to Hancock at the 8195 number after September 21, 2015 were made solely to collect on his FFELP Loans. **Exh. A** at 4, ¶ 24.

## IV.     ISSUE STATEMENT

**A.**     Did NSL have express consent to call Hancock at the 8195 number using an ATDS, artificial voices, and prerecorded messages between March 29, 2017 and July 24, 2017?

**B.**     If NSL lacked consent to call Hancock at the 8195 number between March 29, 2017 and July 24, 2017, does the TCPA apply to the 11 calls NSL made to him during this time?

**C.**     Are Hancock's IDCSA claims preempted as a matter of law?

**D.**     If Hancock's IDCSA claims are not preempted, were NSL's 11 calls to Hancock in the absence of a stop-calling request "unfair, abusive, or deceptive" as a matter of law?

## V.     SUMMARY JUDGMENT STANDARD

Summary judgment must be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A fact is material only if it "might affect the outcome of the suit under the governing law." *Id.* A dispute is genuine only if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

## VI.  SUMMARY OF THE ARGUMENT

Hancock's TCPA and IDCSA claims fail as a matter of law because they arise out of federal student loan collection efforts that Congress and ED determined should not subject student loan servicers like NSL to the threat of costly and uncertain litigation.

NSL had express, written consent at all relevant times to call Hancock's telephone number ending 8195 using an ATDS or a prerecorded message. However, even if that were not the case, the Budget Act amended the TCPA to remove federal student loan collection calls from the statute's reach. NSL did not need Hancock's consent to call his the 8195 number using an ATDS or prerecorded messages in an attempt to collect on the FFELP Loans after the Budget Act's effective date: November 2, 2015. Since it is undisputed that NSL made each of the 11 calls at issue in an attempt to collect on Hancock's delinquent FFELP Loans, they were not the type of call the TCPA regulates as a matter of law. Hancock's TCPA claim must fail.

Each of Hancock's tenuous state law claims targeting NSL's collection of the FFELP Loans also are preempted. Allowing Hancock's claims to proceed not only would usurp ED's intent to create uniform rules governing the collection of federal student loans, it also would jeopardize ED's ability to maximize taxpayers' return on delinquent federal student loans. Moreover, NSL's conduct was not "unfair, abusive, or deceptive as a matter of law. This Court therefore should grant summary judgment to NSL on all of Hancock's claims.

## VII.  ARGUMENT & AUTHORITIES

**A.  NSL had prior express consent to call Hancock's alleged cellular telephone number using an ATDS and artificial voices or prerecorded messages.**

The summary judgment evidence shows that on November 11, 2009, **Exh. A-1**; MPN at 1, § F, ¶ 14; and on December 30, 2015, **Exh. A-2**, Hancock consented to receive the 11 calls of which he now complains. Since he did not revoke that consent before filing this lawsuit on July

24, 2017, his TCPA claims fail regardless of whether NSL made the 11 calls between March 29, 2017, and July 24, 2017, using an ATDS and/or artificial voice or prerecorded messages. **Exh. A** at 4, ¶ 19. NSL did not violate the TCPA as a matter of fact or law. 47 U.S.C. § 227(b)(1)(A).

**B.    The Budget Act bars Hancock's TCPA claims as a matter of law.**

Even if NSL did not have Hancock's express consent, his TCPA claims would still fail. Congress amended the TCPA to remove ATDS calls from the statute's prior express consent requirement when they are made "to collect a debt owed to or guaranteed by the United States." *See* 47 U.S.C. § 227(b)(l)(A)–(B). In addition, Congress directed the FCC to prepare regulations and "stated that such regulations could, if the FCC chose, limit 'the number and duration of calls made to a telephone number assigned to a cellular telephone service to collect a debt owned [sic] to or guaranteed by the United States.'" *Schneider*, 2018 WL 2739437, at *3 (quoting 47 U.S.C. § 227(b)(2)(H)). The FCC issued the 2016 Report and Order to enact such regulations; however, "[d]espite the fact that only certain parts of the proposed regulations required approval by the [OMB], the FCC chose not to have any of the regulations take effect until OMB gave such approval." *Schneider*, 2018 WL 2739437, at *3. OMB never gave that approval. *See supra.*

1.    The FCC's stop-calling rules did not take effect.

The FCC's decision not to make its rules immediately effective is key because, after the FCC published its 2016 Report and Order, it withdrew the rules. Consequently, they were never added to the Code of Federal Regulations. *See* 47 C.F.R. § 64.1200 (lacking proposed subsection (j)). Since the FCC acted to prevent the implementation of the stop-calling rules before their effective date, the rules do not represent the policy of the agency and are not legally binding.

2.    The plain text of the TCPA, as amended, governs Hancock's claims.

Because the FCC's proposed regulations never became final, the plain language of the TCPA continues to govern claims like Hancock's. *See Whalen*, 2018 WL 1242020, at *4 ("The

amendment became effective on November 2, 2015, when Congress enacted the [Budget Act]. [.
. . .] The FCC (and ED) lacks authority to amend a statute of Congress, and thus, the rules and
regulations of the FCC could not change the effective date of the TCPA amendment . . . .");
*Schneider*, 2018 WL 2739437, at *5–6 (rejecting the plaintiff's contention that the Budget Act
never took effect as a result of the FCC's failure to "prescribe implementing regulations")*.*

As the FCC has recognized, amended Sections 227(b)(l)(A) and (B) of the TCPA "now
explicitly *do not* make it unlawful for anyone to make autodialed, artificial-voice, or
prerecorded-voice calls to both wireless phones and residential landline phones, without the prior
express consent of the called party, provided that the calls are 'made solely to collect a debt
owed to or guaranteed by the United States.'" *In re Rules & Regulations Implementing
Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Notice of Proposed
Rulemaking, FCC 16-57 at 2, ¶ 4 & n.16 (May 6, 2016) (emphasis in original) (quoting Budget
Act § 301(a)(1) (amending 47 U.S.C. § 227(b)(1)(A)); *see also Workman v. Navient Solutions,
Inc.*, No. 1:16-cv-00457-JMS-DKL, 2016 WL 4088716, at *1–2 (S.D. Ind. July 27, 2016).

Therefore, the controlling text before this Court states:

**(1) Prohibitions**

It shall be unlawful for any person . . . —

**(A)** to make any call (other than a call . . . made with the prior express consent of the
called party) using any automatic telephone dialing system or an artificial or
prerecorded voice—

[. . .]

(iii) to any telephone number assigned to a . . . cellular telephone service . . . , unless
such call is made <u>solely to collect a debt</u> owed to or <u>guaranteed by the United
States</u>[.]

47 U.S.C. § 227(b) (amended language emphasized). Hancock's claims fail because each call at
issue was made solely to collect on a debt guaranteed by the United States.

The Complaint makes clear that NSL's calls were "made solely to collect" on Hancock's FFELP Loans. 47 U.S.C. §227(b); *see* Compl. at 3, ¶ 16 ("Plaintiff was informed by one of Defendant's representatives that it was seeking to collect upon a defaulted student loan."); *id.* at 5, ¶ 29 ("The calls placed by Defendant to Plaintiff were regarding collection . . . ."); *id.* at 5, ¶ 32 ("Defendant violated I.C. 24-5-0.5-3(a) and (b)(19) by engaging in an unfair, abusive and deceptive practice through its systematic collection efforts towards Plaintiff."); *id.* at 6, ¶ 36 ("Defendant's collection calls to Plaintiff were 'consumer transactions' as defined by the IDCSA, I.C. 24-5-0.5-2(a)(1)(C)."); *id.* at 6, ¶ 37 ("However, Defendant purposefully ignored Plaintiff's prompts in an abusive attempt to collect payment from him.").

NSL's summary judgment evidence confirms that it was attempting to collect on the FFELP Loans. **Exh. A** at 4, ¶ 24; **Exh. A-5**; **Exh. A-6**. Thus, there is no genuine dispute whether NSL's calls were made solely to collect the Hancock's delinquent FFELP Loans.

"The FFEL Program is an umbrella term for four different guaranteed student loan programs: <u>the Robert T. Stafford Federal Student Loan Program</u>, 20 U.S.C. § 1071; the Federal Supplemental Loans for Students Program, 20 U.S.C. § 1078–1; the Federal PLUS Loan Program, 20 U.S.C. § 1078–2; and the Federal Consolidation Loan Program, 20 U.S.C. § 1078–3." *Morgan v. Markerdowne Corp.*, 976 F. Supp. 301, 308 n.5 (D.N.J. 1997) (emphasis added).

Because Hancock's student loans were made under FFELP, they are loans guaranteed by the United States. *See, e.g.*, *Whalen*, 2018 WL 1242020, at *5; *Weaver*, 2017 WL 3456325, at *3; *Hassert*, 232 F. Supp. 3d at 1050; *see also Bible*, 799 F.3d at 640 (recognizing the government is the "ultimate guarantor" of FFELP loans). There is no genuine dispute, then, whether the phone calls at issue in this case were made solely in an attempt to collect a debt

guaranteed by the United States. Your Honor therefore should join Senior Judge Lawrence of this Court and hold that the TCPA, as amended in the Budget Act, provides a "complete defense" to claims based on federal student loan collection calls. *Sanford*, 2018 WL 4699890, at *2.

For example, in *Schneider v. Navient Solutions, LLC*, No. 16-CV-6760 CJS, 2018 WL 2739437 (W.D.N.Y. June 7, 2018), a borrower brought claims under the TCPA against NSL for calls made to his cellular phone in connection with efforts to collect on student loans made under FFELP. *Id.* at *1. The court granted summary judgment for NSL, holding that it "was entitled to call [p]laintiff, even without his prior consent"—*i.e.*, that the calls were exempted from the TCPA—because it "was calling [p]laintiff about a debt owed to or guaranteed by the United States." *Id.* at *5. In so holding, the court rejected plaintiff's contention that the Budget Act's amendment never took effect as a result of the FCC's failure to prescribe implementing regulations after the Budget Act's passage, because "such fact [did] not mean the statute did not become effective as soon as it was signed by the President." *Id.* at *5–6.

The United States District Court for the Northern District of Alabama's decision in *Green v. Navient Solutions, LLC*, No. 1:17-CV-1453-VEH, 2018 WL 6303775 (N.D. Ala. Nov. 29, 2018), also is instructive. In it, the *Green* court rightly held that the TCPA, as amended by the Budget Act, barred the plaintiff's TCPA claims for calls that NSL allegedly made to collect on a FFELP consolidation loan. *See id.* at *5-7 (concluding the 2016 FCC Order—and its proposed stop-calling regulations—never went into effect). Citing the plain language of the statute, the court held that NSL's alleged debt collection calls to the plaintiff were exempt from the TCPA's prior express consent requirement. *Id.* at *7 & n.19. The court accordingly granted summary judgment in favor of NSL and dismissed the case with prejudice. *Id.*; *see also Gaza v. Navient Solutions, LLC*, No. 8:18-cv-1049-MSS-SPF, 2019 WL 645390, at *2-3 (M.D. Fla. Jan. 23,

2019) (citing *Green*, 2018 WL 6303775, at *6) (holding that any calls placed by NSL to collect on federally guaranteed student loans were exempt from the provisions of the TCPA).

This Court should reach the same conclusion as Senior Judge Lawrence, as well as the courts above, and grant summary judgment on Hancock's TCPA claims because the summary judgment evidence shows each call at issue in the Complaint was made solely to collect a debt guaranteed by the United States after the Budget Act became effective in November 2015. Congress exempted such calls from the TCPA; therefore, no TCPA liability exists.

3.     <u>Applying the plain text of the Budget Act is consistent with Congress's intent.</u>

Hancock's TCPA claim involves precisely the type of calls that Congress intended to exempt from the TCPA. In the lead-up to the Budget Act's passage, ED called for Congress to "change the law to ensure that servicers can contact borrowers using modern technology." *See* **Exh. F**, U.S. Department of Education, *Strengthening the Student Loan System to Better Protect All Borrowers*, at 16, October 1, 2015), https://www2.ed.gov/documents/press-releases/strengthening-student-loan-system.pdf (last visited January 29, 2019).

ED explained that "[i]f servicers are able to contact a borrower, they have a much better chance at helping that borrower resolve a delinquency or default." *Id.*

> Many student loan borrowers, especially those that may just be graduating, move frequently in addition to no longer having landline phone numbers. As such, it can be difficult for servicers to find a borrower except by using a cell phone number. Current Federal law prohibits servicers from contacting borrowers on a cell phone number using an auto-dialer unless the borrower has provided explicit consent to be contacted at that number. With phone numbers changing or being reassigned on a regular basis, it is virtually impossible for servicers to use auto-dialing technology. [. . . .] Congress should change the law to ensure that servicers can contact borrowers using modern technology and help them get into the right repayment plan and avoid the consequences of default or resolve their default.

*Id.* Congress did exactly that, enabling servicers to use modern dialing equipment to call delinquent federal loan borrowers without fear of suit under the TCPA. Based on the Budget Act

and ED's sound, underlying rationale in requesting it, NSL is entitled to summary judgment.

## C. The HEA, its regulations, and related contracts pervasively regulate the collection of federal student loans and, therefore, preempt Hancock's IDCSA claims.

The Supremacy Clause of the Constitution states that federal law "shall be the supreme Law of the land." U.S. Const. art. VI, cl. 2. Therefore, "state laws that conflict with federal law are without effect." *Altria Group, Inc. v. Good,* 555 U.S. 70, 70 (2008).

"Preemption can take on three different forms: express preemption, field preemption, and conflict preemption." *Aux Sable Liquid Products v. Murphy*, 526 F.3d 1028, 1033 (7th Cir. 2008). "Conflict preemption can occur in two situations: (1) when 'it is impossible for a private party to comply with both state and federal requirements,' or (2) when 'state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Bible*, 799 F.3d at 652 (citations and internal quotation marks omitted)).

"Federal regulations have no less pre-emptive effect than federal statutes." *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 151, 153 (1982). "Where Congress has directed an administrator to exercise his discretion, his judgments are subject to judicial review only to determine whether he has exceeded his statutory authority or acted arbitrarily." *Id.* at 153–54.

Courts "'must give substantial deference to an agency's interpretation of its own regulations.'" *Brannan v. United Student Aid Funds, Inc*., 94 F.3d 1260, 1263 (9th Cir. 1996) (quoting *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994)). The Court's "task is not to decide which among several competing interpretations best serves the regulatory purpose. Rather, the agency's interpretation must be given controlling weight unless it is plainly erroneous or inconsistent with the regulation." *Id.* (internal quotation marks omitted).

Here, the Secretary of ED

is uniquely qualified to determine whether a particular form of state law 'stands as an

obstacle to the accomplishment and execution of the full purposes and objectives of Congress,' . . . and therefore, whether it should be preempted.

*Medtronic, Inc. v. Lora Lohr*, 518 U.S. 470, 496 (1996) (citation omitted).

      1.    <u>The HEA, its regulations, and related guidance pervasively regulate the collection of the FFELP Loans and, therefore, preempt Hancock's IDCSA claims.</u>

The HEA's regulations are pervasive with respect to the collection of Hancock's FFELP Loans. For contacts by letter or telephone, ED has stated that its regulations "require lenders to make a number of contacts with the borrower directly, at specified intervals, using particular warnings to attempt to persuade the borrower to repay the loan" and, further, that these regulations "comprehensively regulate the pre-litigation informal collection activity on [FFELP] obligations, by specifically required holders to complete a sequence of collection contacts with debtors." 55 Fed. Reg. at 40121. ED's 1990 Notice of Interpretation confirms the government intends to, and does, fully occupy the field of regulating the collection of FFELP loans.

Specific to preemption, the Secretary of ED also formally interpreted the HEA's regulations as preempting any "State law that would prohibit, restrict, or impose burdens on the completion of that sequence of contacts." 55 Fed. Reg. at 40121, ¶ 1. "Moreover, because holders of [FFELP] loans commonly engage servicers and collection agencies to perform these dunning activities, this preemption includes any State law that would hinder or prohibit any activity taken by these third parties to complete these required steps." *Id.*

As noted above, the current HEA regulations make this preemption explicit. 34 C.F.R § 682.411(o). Since the Notice of Interpretation reflects ED's interpretation of its own regulations, and the same reasoning has been adopted by formal rule, this Court should conclude the HEA preempts all claims for alleged IDSCA violations by NSL when collecting on the FFELP Loans.

The Ninth Circuit's decision in *Brannan v. United Student Aid Funds, Inc*., 94 F.3d 1260 (9th Cir. 1996), is instructive. The *Brannan* court considered the preemption effect of ED's due diligence regulations in view of Oregon's Unfair Debt Collection Practices Act ("UDCPA"). The plaintiff alleged that the defendant, a student loan guarantor, violated the UDCPA "by threatening to cause her to lose her job, by communicating with third parties about the debt, and by refusing to communicate about the debt through her attorney." *Id*. at 1262. The district court granted summary judgment on the plaintiff's UDCPA claims holding that the HEA completely preempted the state debt collection statute. *Id.* The Ninth Circuit affirmed. *Id*. at 1263.

The *Brannan* court explained:

> The preemptive effect of the [FFEL] regulations is clear. The [FFEL] regulations preempt "State law that would prohibit, restrict, or impose burdens" on the sequence of pre-litigation contacts required by the [FFEL] regulations; thus, "preemption includes *any* State law that would hinder or prohibit *any* activity" taken by third-party debt collectors prior to litigation. 55 Fed. Reg. at 41021 (emph. added). Because the Oregon UDCPA consists of nothing but prohibitions, restrictions and burdens on collection activity, it is preempted.

*Brannan*, 94 F.3d at 1266. The majority of the court accordingly concluded that, "[a]lthough the HEA does not preempt all state law governing lenders and guarantors of student loans, it does preempt state law inconsistent with the GSL regulations governing a third-party debt collector's pre-litigation collection activities." *Id.* at 1263 (citing 55 Fed. Reg. at 40121–2); *accord Pirouzian v. SLM Corp.*, 396 F. Supp. 2d 1124, 1129 (S.D. Cal. 2005).

A similar preemption ruling from this Court would be proper considering the HEA's due diligence regulations were "'designed to prevent defaults and the loss to the Federal Treasury, through claims under the Department's reinsurance commitments, caused by these defaults, and where these have already occurred, to recover from defaulting borrowers the amounts paid from the Treasury.'" *Pirouzian.*, 396 F. Supp. 2d at 1129 (citation omitted). "Because the United

States guarantees these loans, it has an interest in protecting itself against the risk of unreasonable loss by ensuring that lenders employ due diligence in the collection of these loans." *Williams v. Educ. Credit Mgmt. Corp.*, 88 F. Supp. 3d 1338, 1344 (M.D. Fla. 2015) (citation omitted). And, like the provisions of the UDCPA preempted in *Brannan*, the IDSCA "consists entirely of restrictions and prohibitions on collection activity." *Brannan*, 94 F.3d at 1266.

As the Ninth Circuit has recognized, "the congressional purpose in enacting the HEA was not to make it easier for defaulters to get money from loan collectors, but to protect the millions of students who would suffer irremediable loss if Congress had to shut down the [FFEL] program." *Id.* at 1264–65. Subjecting lenders and third parties to varying state law restrictions (and exposure to fact-intensive lawsuits under 50 separate sets of laws and court systems) would impermissibly inhibit their exercise of due diligence in violation of ED's express intent. *Id.*

This Court should protect the government's $1.4 trillion+ fiscal interest,[2] agree with ED's well-reasoned guidance, and hold that Congress's and ED's pervasive regulation of federal student loan collection broadly preempts each of Hancock's IDSCA claims as a matter of law.

Alternatively, if the Court adopts a claim-by-claim approach to HEA conflict preemption,[3] it should still hold that each of Hancock's claims are preempted as a matter of law.

---

[2] *See* **Exh. G**, Federal Student Aid, An Office of the U.S. Department of Education, *Federal Student Aid Portfolio Summary*, https://studentaid.ed.gov/sa/sites/default/files/fsawg/datacenter/library/PortfolioSummary.xls (last visited May 9, 2019) (showing outstanding federal student loans of $1.447.1 trillion as of Q1 2019).

[3] *See Riel v. Navient Sols. Inc.*, No. 16-CV-1191-JPS, 2017 WL 168900, at *4 (E.D. Wis. Jan. 17, 2017) (citations omitted) (incorrectly reading prior decisions to suggest that the Seventh Circuit has declined *Brannan*'s broad approach to HEA preemption and "requires an analysis of the particular claim at issue to determine whether it truly conflicts."). The *Riel* court cites the Seventh Circuit's decisions in *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633 (7th Cir. 2015), and *Johnson v. Sallie Mae Servicing Corp.*, 102 Fed. Appx. 484 (7th Cir. 2004), for this proposition. However, nothing in the *Bible* opinion suggests this issue was before the Court, and review of the appellee's brief confirms that only a generic conflict preemption argument was made. *See* **Exh. H**. Likewise, in *Johnson*, the Seventh Circuit merely criticized the district court's *assumption* "that the federal regulations themselves would necessarily preempt any state-law claims arising from a dispute about a federal student loan." *Johnson*, 102 Fed. Appx. at 487. The appellate court did not reach the preemption issue because it agreed the plaintiff's claims were frivolous. *Id.* NSL has located no case in which the Seventh Circuit has rejected *Brannan*.

<u>Hancock's I.C. 24-5-0.5-3(a) claim based on the number and frequency of calls made by NSL is preempted because it poses an obstacle to NSL's exercise of mandatory due diligence when collecting on the FFELP Loans.</u>

"A state law may pose an obstacle to federal purposes by interfering with the accomplishment of Congress's actual objectives, or by interfering with the methods that Congress selected for meeting those legislative goals." *Coll. Loan Corp. v. SLM Corp.*, 396 F.3d 588, 596 (4th Cir. 2005) (citation omitted). The key question here is whether subjecting NSL to liability under I.C. § 24-5-0.5-3(a), which makes it unlawful to "commit an unfair, abusive, or deceptive act, omission, or practice," would hinder NSL's ability to meet any of its obligations under the HEA's regulations. This Court should answer "yes." Imposing such an uncertain and inherently fact-intensive inquiry for NSL's conduct would interfere with the government's interests in the effective collection of federal student loans, including uniformity.

The Middle District of Florida's decision in *Williams v. Educational Credit Management Corporation*, 88 F. Supp. 3d 1338 (M.D. Fla. Feb. 26, 2015), provides helpful guidance in connection with a similar statute. The plaintiff in that case alleged violations of multiple subsections of the Florida's Consumer Collection Practices Act ("FCCPA"), including Fla. Stat. § 559.72(7),[4] resulting from her receipt of debt collection letters sent by a loan servicer on behalf of the guaranty agency in connection with a FFELP loan. *Id.* at 1345. The guaranty agency moved to dismiss the complaint arguing the plaintiff's FCCPA claims were preempted by the HEA. Despite noting it was possible to comply with both the HEA's due diligence regulations and Fla. Stat. § 559.72(7), the *Williams* court agreed that the plaintiff's harassment claim was preempted because "[s]ubjecting guaranty agencies to litigation and trial to resolve whether their debt collection actions were 'reasonable'—a determination that is inherently fact-intensive and

---

[4] The FCCPA makes it unlawful in relevant part to "willfully communicate with the debtor . . . with such frequency as can reasonably be expected to harass the debtor . . . ." Fla. Stat. § 559.72(7).

subjective . . .—would have a chilling effect on debt collection efforts and would hinder the satisfaction of the requirements of the federal regulation." *Id.*

The same reasoning applies in this case. Like the guaranty agency in *Williams* (including its servicer) which was required to engage in due diligence collection efforts under 34 C.F.R. § 682.410, NSL had a duty under 34 C.F.R. § 682.411 to collect on the FFELP Loans before submitting a default claim to the guaranty agency. NSL must, for example, "engage in at least four diligent efforts to contact the borrower by telephone" when a FFELP loan is 16-180 days delinquent. 34 C.F.R § 682.411(d). NSL also must make a "diligent efforts" to contact the loan's endorser by telephone during the delinquency period, *id.* § 682.411(m)(i). In other instances, NSL must "diligently attempt to locate the borrower through the use of normal commercial skip-tracing techniques." *Id.* § 682.411(g). These are the *minimum* requirements. *See id.* § 682.411(a) (stating the "lender shall engage in at least the collection efforts described in paragraphs (c)-(n)).

Like the guaranty agency in *Williams*, Hancock's I.C. § 24-5-0.5-3(a) claim places NSL in the difficult position of completing its mandatory due diligence collection efforts unable to know how a court or jury may ultimately view the reasonableness of its actions. Even if NSL were to be successful, the fact that Hancock has sued based on a mere 11 calls shows the wide range of innocuous conduct that—in the absence of a bright-line preemption ruling from this Court—will continue to subject it and other federal student loan servicers to costly litigation.

Like the Court in *Williams*, therefore, this Court should conclude that subjecting NSL to the threat of FCCPA liability for "harassment" when contacting Hancock to collect on the FFELP Loans would serve as an obstacle to the government's interest in federal student loan collection and, at the very least, hinder NSL's ability to call by telephone as required by law.

Therefore, consistent with the ruling in *Williams* and ED's stated preclusive intent, this Court should find that the HEA preempts Hancock's I.C. § 24-5-0.5-3(a) claim as a matter of law.

        3.      <u>Hancock's I.C. 24-5-0.5-3(a) claim based on calls made after a stop request also is preempted because the HEA imposes a duty to call to collect on the FFELP Loans.</u>

The HEA's mandatory due diligence regulations also preempt Hancock's I.C. 24-5-05-3(a) claim based on calls made after an alleged stop-calling request because the HEA specifically requires NSL to engage in "*at least* the collection efforts" that include a minimum number of telephone contacts and other collection activities, depending on the delinquency of the loan. 34 C.F.R. § 682.411. Importantly, § 682.411(o) provides that "[t]he provisions of this section[ ] [p]reempt any State law, including State statutes, regulations, or rules, that would conflict with or hinder satisfaction of the requirements or frustrate the purposes of this section[.]" *Id.* Here, there is no evidence that Hancock made a stop-calling request to NSL, or that NSL called the 8195 number after a stop request. Moreover, any claim on this basis would be preempted.

Courts addressing similar scenarios have held that the HEA preempts state law debt collection provisions that conflict with the mandatory contact requirements of the FFELP regulations. For example, in *Adams v. Pennsylvania Higher Eduation. Assistance Agency*, 787 S.E.2d 583 (W. Va. 2016), the state court recognized that the FFELP regulations require a lender to make "forceful" contacts with a borrower and that it is "critical to note that a lender may not avail itself of relief provided by the guarantor unless the required regulatory contacts have been made." *Id.* at 591. Thus, the *Adams* court held the borrower's state law claim based on communications after she stated she was represented by counsel was preempted. *Id.*

The court in *Hunt v. Sallie Mae, Inc.,* No. 11-11324, 2011 WL 2847428 (E.D. Mich. July 19, 2011), reached a similar conclusion. The plaintiff alleged that Sallie Mae, Inc. (now known as NSL, **Exh. A** at 1, ¶ 4) violated the Michigan Collection Practices Act, M.C.L. § 445.251 et

seq., when it called him 21 times after a cease-and-desist request. *Id.* at *1. Since it was undisputed that the plaintiff's loans were FFELP loans, the court agreed that the HEA and its regulations governed NSL's collection efforts. *Id.* at *3. Further, since "the due diligent efforts to collect the outstanding federally guaranteed debt includes contacting the debtor by telephone," *id.*, the court agreed that the plaintiff's state law claim based on the cease-and-desist request was preempted, *id.* at *4. This Court should reach the same result under similar facts.

As discussed above, the HEA regulations at issue contain "an express preemption subsection, which states that the 'provisions of this section . . . [p]reempt any State law, including State statutes, regulations, or rules, that would *conflict with or hinder satisfaction* of the requirements or frustrate the purposes of this section.'" *Id.* at *3 (emphasis added in *Hunt*) (quoting 34 CFR § 682.411(o)). Because requiring NSL to stop calling Hancock based on his alleged oral stop requests would hinder NSL's mandatory due diligence efforts, Hancock's I.C. 24-5-05-3(a) claim similarly is preempted by federal law. *See id.*

4. NSL's conduct was not unfair, abusive, or harassing as a matter of law.

Even if Hancock's I.C. 24-5-0.5-3(a) claim was not preempted, 11 calls over more than 3 months is insufficient to show actionable misconduct as a matter of law. This is particularly true where the evidence does not show any calls made after a cease-and-desist request or other aggravating facts. *See, e.g.*, *Abrams v. MiraMed Revenue Group, LLC*, No. 1:11-CV-652-DKL-WTL, 2013 WL 1319385, at *6 (S.D. Ind. Mar. 29, 2013) (concluding that 11 calls over a 39-day period did not amount to actionable harassment under the Federal Debt Collection Practices Act ("FDCPA")[5] when there was no evidence that the caller spoke to the defendant or called more

---

[5] In relevant part, the FDCPA prohibits debt collectors from "engag[ing] in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt," including "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." 15 U.S.C. § 1692d.

than once per day); *see also Harrington v. RoundPoint Mortg. Servicing Corp.,* 290 F. Supp. 3d 1306, 1309 (M.D. Fla. Nov. 30, 2017) (granting motion for judgment on partial findings in favor of defendant under the FCCPA even though plaintiff presented evidence of 260 calls in less than a one year period, with many of those calls placed on the same day, within hours of each other, and on back to back days); *Lardner v. Diversified Consultants Inc.*, 17 F. Supp. 3d 1215, 1226 (S.D. Fla. 2014) (granting summary judgments where a debt collector made 132 automated calls over 8 months and the debtor did not request the communications stop); *Carman v. CBE Group, Inc.,* 782 F. Supp. 2d 1223, 1232 (D. Kan. 2011) (holding "the evidence [of 149 calls over 2 months] suggests an intent by [the defendant] to establish contact with plaintiff, rather than an intent to harass"); *Beeders v. Gulf Coast Collection Bureau,* 796 F. Supp. 2d 1335, 1338 (M.D. Fla. 2011) (finding no FDCPA violation where the calls occurred for 5 months, they were received between 8:00 A.M. to 11:00 A.M., and occurred at a frequency of no more than 1 call per day); *Clingaman v. Certegy Payment Recovery Svcs.*, No. 10–2483, 2011 WL 2078629, at *4 (S.D. Tex. May 26, 2011) (holding that 55 calls over more than 3 months did not violate the FDCPA where the plaintiff never asked defendant to stop calling); *Jones v. Rash Curtis & Assocs.,* No. 10–CV–0225, 2011 WL 2050195, at *2–3 (N.D. Cal. Jan. 3, 2011) (finding 179 calls did not violate the FDCPA when the plaintiff did not ask defendant to stop calling); *Tucker v. CBE Grp., Inc.,* 710 F. Supp. 2d 1301, 1303 (M.D. Fla. 2010) (holding 57 calls and 6 messages to the plaintiff found not harassing under the FDCPA even though defendant called 7 times a day since plaintiff never notified defendant it was calling the wrong number); *Pugliese v. Prof'l Recovery Serv., Inc.,* No. 09–12262, 2010 WL 2632562, at *10 (E.D. Mich. June 29, 2010) (finding 350 calls in an 8-month period, even after the plaintiffs asked the collector to cease calling, was insufficient as a matter of law to establish violation of the FDCPA).

Because Hancock cannot establish "unfair, abusive, or deceptive" conduct in violation of I.C. 24-5-0.5-3(a) as a matter of law, NSL is entitled to summary judgment.

## VIII.  CONCLUSION

There is no genuine issue of material fact before the Court. The handful of calls from NSL to the 8195 number were placed with his consent, in the absence of a stop-calling request, and solely to collect on a federally guaranteed loan debt. Thus, the calls fall within the TCPA's express exemption for calls made "to collect a debt owed to or guaranteed by the United States." Similarly, the HEA preempts Hancock's IDCSA claims. This Court should grant summary judgment to NSL and award all further relief to which NSL may be justly entitled.

Dated: May 15, 2019

Respectfully submitted,
By: */s/ Aliza Malouf*
Aliza Malouf
Indiana Bar No. 31063-49
**HUNTON ANDREWS KURTH LLP**
1445 Ross Ave., Suite 3700
Dallas, Texas 75202
214-979-8229
(214) 740-7157 (fax)
amalouf@huntonAK.com

**COUNSEL FOR DEFENDANT NAVIENT SOLUTIONS, LLC**

**CERTIFICATE OF SERVICE**

I hereby certify that on May 15, 2019, I filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to all counsel of record.

/s/ Aliza Malouf
Aliza Malouf